UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| COREY L. HARPER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| | ) | No. 3:14-01952 |
| v. | ) | Judge Sharp |
| | ) | |
| CHEMTRADE LOGISTICS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court in this removed action involving a non-competition agreement is Defendant Chemtrade Logistics, Inc.'s Motion to Dismiss (Docket No. 6). That Motion will be denied.

## I.

In moving to dismiss, Defendant summarizes the pertinent allegations from Plaintiff's Complaint and the documents attached thereto as follows:

> According to Plaintiff's Complaint, Plaintiff began working for Southern Water Consultants as a technical/sales representative in or around May 2011. Plaintiff's sales territory was Kentucky, Tennessee, and North Alabama. Southern Water Consultants manufactured chemicals and coagulants for a wide array of direct sales clients as well as distribution networks. In or around February 2012, Plaintiff asserts that Southern Water Consultants entered into an agreement for substantially all of their assets to be purchased by General Chemical LLC. Plaintiff received correspondence via email from Robert D. Novo, Chief Administrative and Compliance Officer for General Chemical on or about February 3, 2012. This correspondence included an offer of employment to the Plaintiff, contingent upon the completion of General Chemical LLC's transaction with Southern Water Consultants and, among other things, Plaintiff's execution of a non-competition agreement with General Chemical LLC. . . . While employed by General Chemical LLC, Plaintiff was a sales representative and his territory was Kentucky, Tennessee, North Carolina, and Virginia, where he sold chemicals in the municipal and industrial

1

markets.

On or around January 24, 2014, Chemtrade purchased General Chemical LLC. After Chemtrade's acquisition, Plaintiff's territory was realigned by his direct superior, Mike Ellis. Plaintiff asserts that the territories covered by Chemtrade were assigned among existing Chemtrade sales representatives, Plaintiff, and one (1) other General Chemical LLC sales representative. Plaintiff's new title, after the territory reassignment, was Account Manager for Kentucky, Tennessee, and Southeast Arkansas. Plaintiff was told to focus on customer service, functioning in an account manager role.

In June, 2014, Plaintiff received a letter from Leon Arts, Vice President of Sales Marketing for Chemtrade. This document informed Plaintiff that he would receive a merit increase of one thousand six hundred dollars ($1,600.00). Plaintiff claims that he was also presented with a second non-compete agreement that he ultimately refused to sign. On or about July 10, 2014, Plaintiff met with his supervisor and submitted his resignation.

Plaintiff began a new job with USALCO, a competitor of Chemtrade, on August 1, 2014. On or about September 5, 2014, USALCO's Vice President of Sales, Terry Badwak, called Plaintiff and informed him that a representative from Chemtrade had contacted Mr. Badwak and demanded USALCO terminate Plaintiff's employment because Plaintiff had signed a non-competition agreement three (3) years prior when Southern Water Consultants was acquired by General Chemical LLC. USALCO terminated Plaintiff's employment on or about September 12, 2014.

(Docket No. 7 at 1-3, footnotes and internal citation to Complaint omitted).

Based upon the foregoing, Defendant moves to dismiss Plaintiff's claims for breach of contract (Count 1) and specific performance (Count 3), and his requests for injunctive relief (Count 2) and specific performance (Count 4). Although Defendant may at some point be entitled to judgment on one or more of Plaintiff's claims, its present request is premature given the standards governing a Motion to Dismiss.

**II.**

**A.**

Defendant first moves to dismiss the breach of contract claim because there is no self-

standing claim for breach of the duty of good faith and fair dealing under Tennessee law, citing, Lynch v. Farmers Ins. Exchange, 26 S.W.3d 888, 894 (Tenn. Ct. App. 2006). But as Lynch itself states, the breach of the covenant of good faith and fair dealing is "a part of a breach of contract cause of action," id. and, as the Tennessee Supreme Court has recently reiterated, "[i]t is well-established that '[i]n Tennessee, the common law imposes a duty of good faith in the performance of contracts,'" and these obligation "are imposed in the performance and enforcement of every contract ." Dick Broadcasting Co., Inc. of Tennessee v. Oak Ridge FM, Inc., 395 S.W.3d 653, 658 (Tenn. 2013) (quoting Wallace v. Nat'l Bank of Commerce, 938 S.W.2d 684, 686 (Tenn. 1996)).

Here, Plaintiff does not bring a stand-alone claim for the breach of duty of good faith and fair dealing. Rather, Count 1 is captioned "Breach of Contract and Good Faith," and specifically references "the non-competition agreement executed by Plaintiff." (Docket No. 1-6, Complaint at ¶ 15).

Defendant next argues "Plaintiff's breach of contract claim should be dismissed because he has utterly failed to establish the required elements of a breach of contract claim under Tennessee law." (Docket No. 7 at 6). As Defendant correctly notes, the elements of a breach of contract claim "include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." C & W Assets Acquisition LLC v. Oggs, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007). But the time to *establish* those element comes later; for now the issue under Rule 12(b)(6) of the Federal Rules of Civil Procedure is whether the Complaint "'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)). It does.

In arguing otherwise, Defendant asserts that "Plaintiff contends that Chemtrade altered the terms of his employment, thus nullifying the non-competition agreement executed by Plaintiff" and, that "Plaintiff may be attempting to assert a claim under the 'material change' rule under *Massachusetts* law." (Docket No. 7 at 6) (emphasis in the original). Why Plaintiff would rely on Massachusetts law is unclear – Plaintiff alleges he is a resident of Tennessee, Defendant is Delaware corporation with operations in Tennessee and a principal office in Ohio, and the non-compete agreement attached to the Complaint, though blurry and hard to read, does not appear to specify the law to be applied.

Regardless, Defendant misplaces reliance on Judge Trauger's decision in Lewis v. MedAssets Net Rev. Sys., LLC, 2012 WL 3061855 (M.D. Tenn. 2012) and her citation to Teter v. Republic Parking Sys., Inc., 181 S.W.3d 330, 337-338 (Tenn. 2005). While Lewis quotes Teter for the proposition that "modification of an existing contract cannot be accomplished by the unilateral action of one of the parties" and that "there mut be the same mutuality of assent and meeting of minds as required to make a contract," both cases were decided in the context of a motion for summary judgment where the facts in relation to the breach of contract claim were undisputed. Lewis, 2012 WL 3061855, at *11; Teter, 181 S.W.3d at 337.

Moreover, the relevant issue in both cases was whether the plaintiffs, who had lost their jobs because they failed to sign a new non-compete, had been terminated or had voluntarily resigned their positions. Although both cases indicate that the prior non-compete remained in effect, it does not appear that there was an issue about whether the employer had met its obligations under the agreement pursuant to which Plaintiff worked. Here, in contrast, Plaintiff alleges that Chemtrade

4

unilaterally altered Plaintiff's agreement with General Chemical, resulting in overall decrease in salary and benefits and an alteration of his job responsibilities.

**B.**

With respect to Plaintiff's claims for injunctive relief, Defendant observes that "a district court must consider the following factors: '(1) whether the movant would suffer irreparable harm without the injunction; (2) whether issuance of the injunction would cause substantial harm to others; (3) whether the public interest would be served by the issuance of the injunction; and (4) whether the movant has demonstrated a strong likelihood of the merits as to each claim.'" (Docket No. 9 at 7, quoting, Banc Card Georgia, LLC v. United Cmty. Bank, 2013 WL 3700602, at *4 (E.D. Tenn. July 24, 2014). It quotes the same case for the proposition that "'[a] plaintiff's harm from the denial of a preliminary injunction is irreparable *if it is not fully compensable by monetary damages*.*"* (Id., emphasis by Defendant).

Thus far, Plaintiff has not filed a motion for temporary restraining order and so there is no "movant" within the meaning of Rule 65 of the Federal Rules of Civil Procedure, let alone any basis to consider whether Plaintiff can demonstrate a strong likelihood of success on the merits. Plaintiff also request permanent injunctive relief, however, and the Court cannot say as a matter of law that such relief is not available.

**C.**

Defendant moves to dismiss Plaintiff's request for specific performance because the Complaint "does not provide Defendant 'fair notice' of the 'ground upon which Plaintiff's specific performance claim rests,' and . . . is precisely the skeletal pleading for which Twombly and Iqbal were intended to provide redress.'" (Docket No. 7 at 10). This Court disagrees.

5

The specific performance count incorporates by reference all of the prior paragraphs in the Complaint and pleads that "there is no reasonable alternative in equity but to specifically require the Defendants to release Plaintiff from the non-competition agreement as set forth above." (Docket No. 1-7, Complaint ¶ 25). This is more than sufficient to provide Defendant with fair notice as to the claim.

Defendant also asserts that the allegations in the Complaint "'ignores long-standing Tennessee precedent that specific performance is not available to a party as of right,'" and that "'[i]n Tennessee, the award of specific performance is within the discretion of the trial court upon consideration of all the facts and circumstances surrounding the transaction.'" (Docket No. 7 at 10-11, quoting Hometown Folks, LLC v. S & B Wilson, Inc., 2008 WL 918519, at *3 (E.D. Tenn. April 3, 2008).

Obviously, the Court is not in a position to consider "all of the facts and circumstances surrounding the transaction" in the context of a Motion to Dismiss. Accordingly, the Court will not dismiss Plaintiff's specific performance claim.

**D.**

Finally, Defendant seeks dismissal of Plaintiff's request for a declaratory judgment. It points out that "a declaratory judgment action cannot be used by a federal court to decide theoretical questions," that "federal courts do not use declaratory judgment actions to render advisory opinions," that there "must be an 'actual controversy'" which is "definite and concrete" for declaratory relief to be available, and that such relief must not be an "abstract decision" but must "'settle the controversy' or 'serve a useful purpose in clarifying the legal relations'" between the parties. (Docket No. 7 at 11-12) (citations omitted). No doubt, all of these propositions are correct,

but there is nothing abstract or advisory about determining whether, under the facts of this case, and given Plaintiff's allegation that Defendant breached the agreement and failed to act in good faith, the particular non-compete at issue should be enforced.

**III.**

For the reasons set forth above, Defendant's Motion to Dismiss will be denied. An appropriate Order shall enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE